**ATTACHMENT 1**

**THE JOINT DISCOVERY/CASE-MANAGEMENT PLAN**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| _____, | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-_____ |
| | § | |
| _____, | § | |
| | § | |
| Defendant(s). | § | |

**JOINT DISCOVERY/CASE MANAGEMENT PLAN**
**UNDER RULE 26(f)**
**FEDERAL RULES OF CIVIL PROCEDURE**

Please restate the instruction before furnishing the information.

1. State where and when the meeting of the parties required by Rule 26(f) was held, and identify the counsel who attended for each party.

2. List the cases related to this one that are pending in any state or federal court with the case number and court.

3. <u>Briefly</u> describe what this case is about.

4. Specify the allegation of federal jurisdiction.

5. Identify the parties who disagree and the reasons.

6. List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

7. List anticipated interventions.

8. Describe class-action or collective-action issues.

9. State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.

10. Describe the proposed agreed discovery plan, including:

   A. Responses to all the matters raised in Rule 26(f), including any agreements reached concerning electronic discovery and any disputed issues relating to electronic discovery.

*(Revised April 2017)*

B.      When and to whom the plaintiff anticipates it may send interrogatories.

C.      When and to whom the defendant anticipates it may send interrogatories.

D.      Of whom and by when the plaintiff anticipates taking oral depositions.

E.      Of whom and by when the defendant anticipates taking oral depositions.

F.      When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B), and when the opposing party will be able to designate responsive experts and provide their reports.

G.      List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).

H.      List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(B) (expert report).

I.      In a case involving parties that are unincorporated entities, such as an LLC or LLP, state the citizenship of every member and file an affidavit or declaration setting out the citizenship of every member.

11.     If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

12.     Specify the discovery beyond initial disclosures that has been undertaken to date.

13.     State the date the planned discovery can reasonably be completed.

14.     Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.

15.     From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable, and state when such a technique may be effectively used in this case.

16.     Magistrate judges may now hear jury and nonjury trials. Indicate the parties' joint position on a trial before a magistrate judge.

17.     State whether a jury demand has been made and if it was made on time.

18.     Specify the number of hours it will likely take to present the evidence in this case.

19.     List pending motions that could be ruled on at the initial pretrial and scheduling conference.

20.     List other pending motions.

*(Revised April 2017)*

21.     List issues or matters, including discovery, that should be addressed at the conference.

22.     Certify that all parties have filed the Disclosure of Interested Persons as directed in the Order for Conference and Disclosure of Interested Persons, listing the date of filing for original and any amendments.

23.     List the names, bar numbers, addresses, telephone numbers, and e-mails of all counsel and unrepresented parties.


_____        _____

Counsel for Plaintiff(s)                                        Date


_____        _____

Counsel for Defendant(s)                                      Date

*(Revised April 2017)*

**ATTACHMENT  2**

**THE PROPOSED SCHEDULING AND
DOCKET CONTROL ORDER**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| _____, | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-_____ |
| | § | |
| _____, | § | |
| | § | |
| Defendant(s). | § | |

**PROPOSED SCHEDULING AND**
**DOCKET CONTROL ORDER**

The disposition of this case will be controlled by the following schedule:

1. _____  **MOTIONS TO ADD NEW PARTIES**
The attorney causing the addition of new parties will provide copies of this Order to new parties.

2. _____  **MOTIONS FOR LEAVE TO AMEND PLEADINGS**
Parties filing motions after this deadline must show good cause.

**EXPERTS ON MATTERS OTHER THAN ATTORNEY'S FEES**

3a. _____  The plaintiff (or the party with the burden of proof on an issue) will designate expert witnesses in writing and provide the report required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

3b. _____  The opposing party will designate expert witnesses in writing and provide the report required by Rule 26(a)(2) of the Federal Rules of Civil Procedure.

4. _____  **MEDIATION**
Mediation or other form of dispute resolution must be completed by this deadline.

5. _____  **COMPLETION OF DISCOVERY**
Written discovery requests are not timely if they are filed so close to this deadline that under the Federal Rules of Civil Procedure the response would not be due until after the deadline.

_(Revised March 2017)_

6. _____ **PRETRIAL DISPOSITIVE MOTIONS DEADLINE**
No motion may be filed after this date except for good cause.

7. _____ **JOINT PRETRIAL ORDER AND MOTION IN LIMINE DEADLINE**
The Joint Pretrial Order will contain the pretrial disclosures required by Rule 26(a)(3) of the Federal Rules of Civil Procedure. Plaintiff is responsible for timely filing the complete Joint Pretrial Order. Failure to file a Joint Pretrial Order timely may lead to dismissal or other sanction in accordance with the applicable rules.

8. _____ **DOCKET CALL**
Docket Call will be held at 2:00 p.m. in Courtroom 11-B, United States Courthouse, 515 Rusk, Houston, Texas. No documents filed within 7 days of the Docket Call will be considered. Pending motions may be ruled on at docket call, and the case will be set for trial as close to the docket call as practicable.

9    Additional orders relating to disclosures, discovery, or pretrial motions:

Any party wishing to make any discovery motions should arrange for a pre-motion conference with the court before the preparation and submission of any motion papers. That includes a motion to compel, to quash, or for protection. Email Mrs. Eddins at Lisa_Eddins@txs.uscourts.gov or fax her at 713-250-5213 to arrange for a pre-motion conference. Notify your adversary of the date and time for the conference.

The parties agree to submit attorney's fees issues to the court by affidavit after liability and damages are resolved.

Other: _____
_____

Signed on_____, at Houston, Texas.


_____
Lee H. Rosenthal
Chief United States District Judge

*(Revised March 2017)*

**ATTACHMENT 3**

**GUIDELINES AND PRACTICES FOR IMPLEMENTING
THE 2015 DISCOVERY AMENDMENTS TO
ACHIEVE PROPORTIONALITY**



# GUIDELINES *and* PRACTICES *for* IMPLEMENTING *the* 2015 DISCOVERY AMENDMENTS *to* ACHIEVE PROPORTIONALITY

**The** Duke Law Judicial Studies Center *Guidelines and Practices for Implementing the 2015 Discovery Amendments to Achieve Proportionality* explain amendments to Federal Rule of Civil Procedure 26(b) that take effect on Dec. 1, 2015, and recommend useful, practical, and concrete implementing procedures and practices that build on the amendments' framework.

More than 2,000 comments were submitted during the Civil Rules Advisory Committee's six-month rulemaking public-comment period, expressing concerns about the ambiguity of certain factors enumerated in the proportionality standard ("needs of the case," "burden or expense outweighs benefit," "parties' resources," "importance of issues," and "importance of discovery"). Other comments raised concerns about the significance of reordering the factors and applying certain factors too early in litigation ▸

VOLUME 99    NUMBER 3    WINTER 2015

# JUDICATURE

Published by the Duke Law Center for Judicial Studies and reprinted with permission.

© 2015 Duke University School of Law. All rights reserved. **www.law.duke.edu/judicature**

*published by the*
**DUKE LAW SCHOOL**
**CENTER FOR JUDICIAL STUDIES**

Suggested citation: *Discovery Proportionality Guidelines and Practices*, 99 JUDICATURE, no. 3, Winter 2015, at 47-60.

# ACKNOWLEDGMENTS

We would like to thank the more than 30 experienced practitioners, who devoted substantial time and effort to improve the administration of justice, under the leadership of the project's reporters, Hon. Lee H. Rosenthal and Prof. Steven Gensler. Numerous others, including many judges, provided counsel and advice on discrete issues and general approaches.

Eight of the practitioners assumed greater responsibility as team leaders:

**TEAM LEADERS**

*Mark Chalos*
Lieff Cabraser Heimann & Bernstein

*Joe Garrison*
Garrison, Levin-Epstein , Richardson,
Fitzgerald & Pirrotti, PC

*David Ichel*
Simpson Thacher & Bartlett LLP

*John Jansonius*
Jackson Walker LLP

*Jonathan Levine*
Pritzker Levine LLP

*Annika Martin*
Lieff Cabraser Heimann & Bernstein

Madeleine McDonough
Shook Hardy & Bacon LLP

*Kaspar Stoffelmayr*
Bartlit Beck Herman Palenchar & Scott LLP

The following practitioners lent their substantial expertise in reviewing and suggesting edits to the guidelines:

**TEAM MEMBERS**

*Jennie Anderson*
Andrus Anderson LLP

*Lea Bays*
Robbins Geller Rudman & Dowd

*William Beausoleil*
Hughes Hubbard & Reed LLP

*Anna Benvenutti Hoffmann*
Neufeld Scheck & Brustin LLP

*William Butterfield*
Hausfeld LLP

*Dennis Canty*
Kaiser Gornick LLP

*Michael Dockterman*
Steptoe & Johnson LLP

*Daniel Donovan*
Kirkland & Ellis LLP

*John Griffin*
Marek Griffin & Knaupp

*Maura Grossman*
Wachtell Lipton Rosen & Katz

*Megan Jones*
Hausfeld LLP

*Colleen Kenney*
Sidley Austin LLP

*Jenifer Klar*
Relman, Dane & Colfax PLLC

*Mike Klein*
Altria Client Services Inc.

*Robert Levy*
ExxonMobil Corp.

*Altom Maglio*
Maglio Christopher & Toale PA

*Jon Palmer*
Microsoft Corporation

*Dan Regard*
Intelligent Discovery Solutions, Inc.

*John Rosenthal*
Winston & Strawn LLP

*Dena Sharp*
Girard Gibbs LLP

*Len Simon*
Robbins Geller Rudman & Dowd

*Elise Singer*
Fine, Kaplan and Black RPC

*Don Slavik*
Robinson Calcagnie Robinson Shapiro Davis, Inc.

*Ariana Tadler*
Milberg LLP

**REPORTERS**

*Hon. Lee H. Rosenthal*
*Prof. Steven Gensler*

because they change and evolve during the course of a lawsuit, while others suggested that the amendments shifted the burden of proof.

The Center held a conference on the new amendments with more than 70 practitioners and 15 federal judges Nov. 13-14, 2014, in Arlington, Virginia, as the first step in a drafting process that aimed to provide greater guidance on what the amendments are intended to mean and how to apply them effectively. From the beginning it was understood that, although some disagreed with all or some of the rule changes, the project's goal was not to revisit the choices made during the rulemaking process, but to take the amended rules as the starting point for guidelines to help apply them in specific cases.

Many discovery proportionality practices and procedures were raised and discussed at the conference. At its conclusion, 40 practitioners and judges volunteered to serve on teams, leading to guidelines implementing the new rule amendments.

It was evident at the conference that lawyers practicing in different areas of law viewed the amendments from different perspectives and had different views on how the amendments should be applied. To make sure that these different perspectives were considered in the drafting process, four teams of volunteers were formed with roughly 10 practitioners and judges on each team, divided by practice: (1) personal injury/ products liability; (2) commercial litigation; (3) employment/ civil rights; and (4) complex litigation. Two leaders, one plaintiff practitioner and one defense practitioner, were designated for each team.

The Hon. Lee H. Rosenthal and Prof. Steven Gensler agreed to be the project's reporters. In late March 2015, the reporters provided the four teams a 75-page study, detailing background information about the 2015 rules amendments and proposing approaches for implementing the proportionality amendments. To a large extent, the study built on approaches adopted as best practices by judges who have been strong proponents of the "proportionality principles" for many years. Key points in the study were identified and set out in a stand-alone, 12-page set of guidelines and practices.

The study and the draft guidelines and practices were circulated to the 40 volunteers to get a general sense of the group's thinking. After reviewing the comments, the reporters revised the guidelines and practices and produced the Second Draft in late May.

The four teams circulated proposed edits among themselves and held one or more conference calls in June/July. They submitted joint comments, which were circulated among the four teams. In late July, the reporters revised the draft to account

for the comments, deferring consideration of inconsistent or disputed suggestions for further comment from the teams.

On July 31, 2015, the Third Draft was circulated to the teams and sent to 300 practitioners active in the area. The Third Draft was also posted for three weeks on the Center's website in case others were interested and wished to comment. Thirty-three individuals and organizations, primarily representing lawyers practicing employment discrimination law, submitted comments and proposed edits, all of which were considered by the reporters.

The reporters prepared a Fourth Draft and met with the eight team leaders and an additional judge in a one-day drafting session in Dallas on August 28 to refine the draft and address lingering disagreements. The Fifth Draft was forwarded to the volunteers on Sept. 4, 2015.

The *Guidelines and Practices* are the culmination of a process that began in November 2014. Although the Duke Law Judicial Studies Center retained editorial control, this iterative drafting process provided multiple opportunities for the volunteers on the four teams to confer, suggest edits, and comment on the guidelines and practices. Substantial revisions were made during the process. Many compromises, affecting matters on which the 40 volunteer contributors hold passionate views, were also reached. But the *Guidelines and Practices* should not be viewed as representing unanimous agreement, and individual volunteer contributors may not necessarily agree with every guideline and practice. In addition, the *Guidelines and Practices* may not necessarily reflect the official position of Duke Law School as an entity or of its faculty or of any other organization, including the Judicial Conference of the United States.

The *Guidelines and Practices* were completed after an intensive one-year effort involving the bench, bar, and academy intended to meet the immediate need of the bench and bar for guidance on amendments taking effect in December 2015. Recognizing that case law and case-management techniques quickly evolve, the *Guidelines and Practices* will be periodically updated. The updating will be informed by separate regional conferences held by the Center with smaller groups of judges and practitioners evaluating the *Guidelines and Practices*. A major conference will follow in 18 to 24 months, and the *Guidelines and Practices* will be revised in light of bench and bar actual experience.

By bringing together the strengths of prominent judges, practitioners, and law professors to bear on important issues affecting the civil litigation system, the Center is fulfilling its mission to improve the administration of justice.

John K. Rabiej
Director, Duke Law School Center for Judicial Studies

Malini Moorthy
Chair, Center Advisory Council

Sept. 10, 2015

# I. The Guidelines

These guidelines for applying the 2015 "proportionality" amendments to the Federal Rules of Civil Procedure discuss what the amendments mean, what they did and did not change, and ways to understand their impact and meaning. The guidelines add some flesh to the bones of the rule text and Committee Note and explore how the amendments intersect with other rule provisions. The guidelines are, of course, not part of the rules and have no binding effect. They are a resource for judges, lawyers, and litigants who must understand the amendments and their impact to use and comply with the rules governing discovery.

## GUIDELINE 1

Rule 26(b)(1) defines the scope of discovery as "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Proposed discovery must be both relevant and proportional to be within the scope that Rule 26(b)(1) permits. The Rule 26(b)(1) amendments, however, do not alter the parties' existing discovery obligations or create new burdens.

### COMMENTARY

Discovery that seeks relevant and nonprivileged information is within the permitted scope of discovery only if it is proportional to the needs of the case.

As used in Rule 26(b)(1), proportionality describes:

(a) the six factors to be considered in allowing or limiting discovery to make it reasonable in relationship to a particular case;
(b) the criteria for identifying when the discovery meets that goal;
(c) the analytical process of identifying the limits, including what information is needed to decide what discovery to allow and what discovery to defer or deny; and
(d) the goal itself.

## GUIDELINE 2

Rule 26(b)(1) identifies six factors for the parties[1] and the judge to consider in determining whether proposed discovery is "proportional to the needs of the case." As discussed further in Guideline 3, the degree to which any factor applies and the way it applies depend on the facts and circumstances of each case.

### GUIDELINE 2(A): "Importance of Issues at Stake"

This factor focuses on measuring the importance of the issues at stake in the particular case. This factor recognizes that many cases raise issues that are important for reasons beyond any money the parties may stand to gain or lose in a particular case.

### COMMENTARY

A case seeking to enforce constitutional, statutory, or common-law rights, including a case filed under a statute using attorney fee-shifting provisions to encourage enforcement, can serve public and private interests that have an importance beyond any damages sought or other monetary amounts the case may involve.

### GUIDELINE 2(B): "Amount in Controversy"

This factor examines what the parties stand to gain or lose financially in a particular case as part of deciding what discovery burdens and expenses are reasonable for that case. The amount in controversy is usually the amount the plaintiff claims or could claim in good faith.

### COMMENTARY

If a specific amount in controversy is alleged in the pleadings and challenged, or no specific amount is alleged and the pleading is limited to asserting that the amount exceeds the jurisdictional minimum, the issue is how much the plaintiff could recover based on the claims asserted and allegations made. When an injunction or declaratory judgment is sought, the amount in controversy includes the pecuniary value of that relief. The amount-in-controversy calculation can change as the case progresses, the claims and defenses evolve, and the parties and judge learn more about the damages or the value of the equitable relief.

## GUIDELINE 2(C): "Relative Access to Information"

This factor addresses the extent to which each party has access to relevant information in the case. The issues to be examined include the extent to which a party needs formal discovery because relevant information is not otherwise available to that party.

### COMMENTARY

In a case involving "information asymmetry" or inequality, in which one party has or controls significantly more of the relevant information than other parties, the parties with less information or access to it depend on discovery to obtain relevant information. Parties who have more information or who control the access to it are often asked to produce significantly more information than they seek or are able to obtain from a party with less.

The fact that a party has little discoverable information to provide others does not create a cap on the amount of discovery it can obtain. A party's ability to take discovery is not limited by the amount of relevant information it possesses or controls, by the amount of information other parties seek from it, or by the amount of information it must provide in return. Discovery costs and burdens may be heavier for the party that has or can easily get the bulk of the essential proof in a case.

When a case involves information asymmetry or inequality, proportionality requires permitting all parties access to necessary information, but without the unfairness that can result if the asymmetries are leveraged by any party for tactical advantage. Unfairness can occur when a party with significantly less information imposes unreasonable demands on the party who has voluminous information. Unfairness can also occur when a party with significantly more information takes unreasonably restrictive or dilatory positions in response to the other party's requests.

## GUIDELINE 2(D): "Parties' Resources"

This factor examines what resources are available to the parties for gathering, reviewing, and producing information and for requesting, receiving, and reviewing information in discovery. "Resources" means more than a party's financial resources. It includes the technological, administrative, and human resources needed to perform the discovery tasks.

### COMMENTARY

In general, more can be expected of parties with greater resources and less of parties with scant resources, but the impact of the parties' reasonably available resources on the extent or timing of discovery must be specifically determined for each case.

As with all of the factors, this factor is only one consideration. Even if one party has significantly greater resources, this factor does not require that party to provide all or most of the discovery proposed simply because it is able to do so. Nor does it mean that parties with limited resources can refuse to provide relevant information simply because doing so would be difficult for financial or other reasons. A party's ability to take discovery is not limited by the resources it has available to provide discovery in return.

The basic point is what resources a party reasonably has available for discovery, when it is needed. Evaluating the resources a party can reasonably be expected to expend on discovery may require considering that party's competing demands for those resources.

## GUIDELINE 2(E): "Importance of Discovery"

This factor examines the importance of the discovery to resolving the issues in the case.

### COMMENTARY

One aspect of this factor is to identify what issues or topics are the subject of the proposed discovery and how important those issues and topics are to resolving the case. Discovery relating to a central issue is more important than discovery relating to a peripheral issue. Another aspect is the role of the proposed discovery in resolving the issue to which that discovery is directed. If the information sought is important to resolving an issue, discovery to obtain that information can be expected to yield a greater benefit and justifies a heavier burden, especially if the issue is important to resolving the case or materially advances resolution. If the information sought is of marginal or speculative usefulness in resolving the issue, the burden is harder to justify, especially if the issue is not central to resolving the case or is unlikely to materially advance case resolution.

Understanding the importance of proposed discovery may involve assessing what the requesting party is realistically able to predict about what added information the proposed discovery will yield and how beneficial it will be.

## GUIDELINE 2(F): Whether the Burden or Expense Outweighs Its Likely Benefit

This factor identifies and weighs the burden or expense of the discovery in relation to its likely benefit. There is no fixed burden-to-benefit ratio that defines what is or is not proportional. When proportionality disputes arise, the party in the best position to provide information about the burdens, expense, or benefits of the proposed discovery ordinarily will bear the responsibility for doing so. Which party that is depends on the circumstances. In general, the party from whom proposed discovery is sought ordinarily is in a better position to specify and support the burdens and expense of responding, while the party seeking proposed discovery ordinarily is in a better position to specify the likely benefits by explaining why it is seeking and needs the discovery.

### COMMENTARY

In general, proposed discovery that is likely to return important information on issues that must be resolved will justify expending more resources than proposed discovery seeking information that is unlikely to exist, that may be hard to find or retrieve, or that is on issues that may be of secondary importance to the case, that may be deferred until other threshold or more significant issues are resolved, or that may not need to be resolved at all.

If a party objects that it would take too many hours, consume unreasonable amounts of other resources, or impose other burdens to respond to the proposed discovery, the party should specify what it is about the search, retrieval, review, or production process that requires the work or time or that imposes other burdens.

If a party objects to the expense of responding to proposed discovery, the party should be prepared to support the objection with an informed estimate of what the expenses would be and how they were determined, specifying what it is about the source, search, retrieval, review, or production process that requires the expense estimated.

If a party requests discovery and it is objected to as overly burdensome or expensive, the requesting party should be prepared to specify why it requested the information and why it expects the proposed discovery to yield that information. Assessing whether the requesting party has adequately specified the likely benefits of the proposed discovery may involve assessing the information the requesting party already has, whether through its own knowledge, through publicly available sources, or through discovery already taken.

A party with inferior access to discoverable information relevant to the claims or defenses may also have inferior access to the information needed to evaluate the benefit, cost, and burden of the discovery sought. Assessing the benefits of proposed discovery may also involve assessing how well the requesting party is able to predict what added information the proposed discovery will yield and how beneficial it will be.

Party cooperation is particularly important in understanding the burdens or benefits of proposed discovery and in resolving disputes. The parties should be prepared to discuss with the judge whether and how they communicated with each other about those burdens or benefits. The parties should also be prepared to suggest ways to modify the requests or the responses to reduce the burdens and expense or to increase the likelihood that the proposed discovery will be beneficial to the case.

Rule 26(b)(2)(B) addresses a specific type of burden argument – that discovery should not proceed with respect to a particular source of electronically stored information because accessing information from that source is unduly burdensome or costly. Examples might include information stored using outdated or "legacy" technology or information stored for disaster recovery rather than archival purposes that would not be searchable or even usable without significant effort. Rule 26(b)(2)(B) has specific provisions for discovery from such sources. Those provisions do not apply to discovery from accessible sources, even if that discovery imposes significant burden or cost.

## GUIDELINE 3

Applying the six proportionality factors depends on the informed judgment of the parties and the judge, analyzing the facts and circumstances of each case. The weight or importance of any factor varies depending on the facts and circumstances of each case.

### COMMENTARY

The significance of any factor depends on the case. The parties and the judge must consider each factor to determine the degree to which and the way the factor applies in that case. The factors that

apply and their weight or importance can vary at different times in the same case, changing as the case proceeds.

No proportionality factor has a prescribed or preset weight or significance. No one factor is intrinsically more important or entitled to greater weight than any other.

The order in which the proportionality factors appear in the Rule text does not signify preset importance or weight in a particular case. The 2015 amendments reordered some of the factors to defeat any argument that the amount in controversy was the most important factor because it was listed first.

## GUIDELINE 4

The Rule 26(b)(1) amendments do not require a party seeking discovery to show in advance that the proposed discovery is proportional.

### COMMENTARY

The 2015 amendments to Rule 26(b)(1) do not alter the parties' existing obligations under the discovery rules. The obligations unchanged by the amendments include obligations under:

Rule 26(g), requiring parties to consider discovery burdens and benefits before requesting discovery or responding or objecting to discovery requests and to certify that their discovery requests, responses, and objections meet the rule requirements;

Rule 34, requiring parties to conduct a reasonable inquiry in responding to a discovery request; and

Rule 26(c), Rule 26(f), Rule 26(g), and Rule 37(a), among others, requiring parties to communicate with each other about discovery planning, issues, and disputes. The need for communication is particularly acute when questions concerning burden and benefit arise because one side often has information that the other side may not know or appreciate.

The 2015 amendments do not require the requesting party to make an advance showing of proportionality. Unless specific questions about proportionality are raised by a party or the judge, there is no need for the requesting party to make a showing of or about proportionality. The amendments do not authorize a party to object to discovery solely on the ground that the requesting party has not made an advance showing of proportionality.

The amendments do not authorize boilerplate objections or refusals to provide discovery on the ground that it is not proportional. The grounds must be stated with specificity. Boilerplate objections are insufficient and risk violating Rule 26(g). Objections

that state with specificity why the proposed discovery is not proportional to the needs of the case are permissible.

The amendments do not alter the existing principles or framework for determining which party must bear the costs of responding to discovery requests.

## GUIDELINE 5

If a party asserts that proposed discovery is not proportional because it will impose an undue burden, and the opposing party responds that the proposed discovery will provide important benefits, the judge should assess the competing claims under an objective reasonableness standard.

### COMMENTARY

In deciding whether a discovery request is proportional to the needs of the case, only reasonable (or the reasonable parts of) expenses or burdens should be considered.

Changes in technology can affect the context for applying the objective reasonableness standard. It is appropriate to consider claims of undue burden or expense in light of the benefits and costs of the technology that is reasonably available to the parties.

It is generally not appropriate for the judge to order a party to purchase or use a specific technology, or use a specific method, to respond to or to conduct discovery. In assessing discovery expenses and burdens and the time needed for discovery, however, it may be appropriate for the judge to consider whether a party has been unreasonable in choosing the technology or method it is using.

# II. The Practices

The following practices suggest useful ways to achieve proportional discovery in specific cases. There is no one-size-fits-all approach. While practices that would advance proportional discovery in one case might hinder it in others, the suggestions may be helpful in many cases and worth considering in most. Although many of these suggestions are framed in terms of judges' case-management practices, they are intended to provide helpful guidance to lawyers and litigants as well.

## PRACTICE 1

The parties should engage in early, ongoing, and meaningful discovery planning. The judge should make it clear from the outset that the parties are expected to plan for and work toward proportional discovery. If there are disputes the parties cannot resolve, the parties should promptly bring them to the judge. The judge should make it clear from the outset that he or she will be available to promptly address the disputes.

### COMMENTARY

The judge and the parties share responsibility for ensuring that discovery is proportional to the needs of the case.

The parties are usually in the best position to know which subjects and sources will most clearly and easily yield the most promising discovery benefits. In many cases, the parties use their knowledge of the case to set discovery priorities that achieve proportionality. When that does not occur, judges play a critical role by taking appropriate steps to ensure that discovery is proportional to the needs of the case.

Judges have many practices available to work toward proportionality. They include: (1) orders issued early in the case communicating the judge's expectations about how the parties will conduct discovery; (2) setting procedures for the parties to promptly identify disputes and attempt to resolve them, and if they cannot do so to bring them to the judge for prompt consideration; (3) setting procedures to enable the parties to engage the judge promptly and efficiently when necessary; and (4) communicating the judge's willingness to be available when necessary.

The practices that follow provide examples of approaches that judges and parties have used to timely and efficiently resolve discovery disputes, ranging from objections to overly expansive requests to objections to obstructive or dilatory responses.

While the judge has the ultimate responsibility for determining the boundaries of proportional discovery, the process of achieving proportional discovery is most effective and efficient, and the likelihood of achieving it is greatest, when the parties and the judge work together.

## PRACTICE 2

The judge should consider issuing an order in advance of the parties' Rule 26(f) conference that clearly communicates what the judge expects the parties to discuss at the conference, to address in their Rule 26(f) report, and to be prepared to discuss at a Rule 16 conference with the judge.

### COMMENTARY

The Rule 26(f) conference is a critical first step in achieving proportionality. The judge should make clear – by order or other manner the judge chooses – that the parties are expected to have a meaningful discussion and exchange of information during the Rule 26(f) conference and what the parties are expected to cover. The judge should also make clear that the Rule 26(f) report will be reviewed and addressed at the Rule 16 conference. Judges following this practice often issue a form order that is routinely sent shortly after the case is filed, along with the order sent to set the date to file the Rule 26(f) report or to hold the Rule 16 conference.

In a case in which the judge has a basis to expect that discovery will be voluminous or complex, or in which there is likely to be significant disagreement about discovery, the judge might consider scheduling a conference call with the parties before they hold their Rule 26(f) conference.

Some districts address these practices in their local guidelines or rules.

## PRACTICE 3

The judge should consider holding a "live" Rule 16(b) case-management conference, in person if practical, or by conference call or videoconference if distance or other obstacles make in-person attendance too costly or difficult.

### COMMENTARY

A "live" interactive conference provides the judge and the parties the best opportunity to meaningfully discuss what the discovery

will be, where it should focus and why, and how the planned discovery relates to the overall case plan. A live interactive conference allows the judge to ask follow-up questions and probe the responses to obtain better information about the benefits and burdens likely to result from the proposed subjects and sources of discovery. A live interactive conference also provides the judge an opportunity to explore related matters, such as whether an expected summary judgment motion might influence the timing, sequence, or scope of planned discovery.

The parties and the judge should take advantage of technology to facilitate live interactive case-management and other conferences and hearings when in-person attendance is impractical.

In some cases, more than one live case-management conference might be appropriate. In a case in which discovery is likely to be voluminous or complex, or in which there is likely to be significant disagreement about discovery, the judge and parties should consider whether to schedule periodic live conferences or hearings, which can be canceled if not needed.

Some districts address this practice in their local guidelines or rules.

## PRACTICE 4

The judge should ensure that the parties have considered what facts can be stipulated to or are undisputed and can be removed from discovery.

### COMMENTARY

Discovery about matters that are not in dispute and to which the parties can stipulate is often inherently disproportionate because it yields no benefit. The judge should ensure – through an order, in a Rule 16 conference, or in another manner – that the parties are not conducting discovery into matters subject to stipulation. The judge should also work with the parties to identify matters that are not in dispute and need not be the subject of discovery, even if no formal stipulation is issued.

A live interactive case-management conference provides an excellent opportunity for the judge to raise these questions with the parties.

## PRACTICE 5

In many cases, the parties will initially focus discovery on information relevant to the most important issues, available from the most easily accessible sources. In a case in which the parties have not done so, or in which discovery is likely to be voluminous or complex, or in which there is likely to be significant disagreement about relevance or proportionality, the parties and the judge should consider initially focusing discovery on the subjects and sources that are most clearly proportional to the needs of the case. The parties and the judge should use the results of that discovery to guide decisions about further discovery.

### COMMENTARY

The information available at the start of the case is often enough to allow the parties to identify subjects and sources of discovery that are both highly relevant and accessible without undue burden or expense. Discovery into those subjects and from those sources is usually proportional to the needs of the case because it is likely to yield valuable information with relatively less cost and effort. In many cases, the parties initially focus discovery on these subjects and sources without judicial involvement and without explicitly labeling it as "proportional" or "focused."

If the parties have not thought through discovery, or the discovery is likely to be voluminous or complex, or there is likely to be significant disagreement about relevance or proportionality, the judge should encourage the parties to consider initially focusing discovery on the information central to the most important subjects, available from the most easily accessible sources of that information. The parties and the judge can use the information obtained to guide decisions about further discovery. For example, the parties can use the information to decide whether to make additional discovery requests or how to frame them. The judge can use the information to help understand and resolve proportionality or other questions that may arise during further discovery.

The objective of this approach is to identify good places for discovery to begin, deferring until later more difficult questions about where discovery should end. This approach is sometimes described as conducting discovery into the "low-hanging fruit" and using that information to decide whether more is needed and what that should be. ▶

The parties are usually in the best position to determine whether and how to focus discovery in their cases. In some cases, it is sufficient and preferable for the judge simply to verify that the parties have adequately planned for discovery. In other cases, the judge may need to explore options with the parties to help work toward reaching an agreement.

It may make sense for the parties and the judge to focus early discovery on a particular issue, claim, or defense. For example, a case may raise threshold questions such as jurisdiction, venue, or limitations that are best decided early because the answers impact whether and what further discovery is needed. In some cases, this may be clear after initial disclosures are exchanged. In other cases, it may be necessary for the parties to exchange more information to identify whether and where early discovery might focus.

If the parties have conducted focused early discovery and more discovery is sought, no heightened showing is required. The parties and the judge will have more information to assess proportionality, but the factors and their application do not change simply because some discovery has occurred.

A judge who holds a live Rule 16 conference can address with the parties the potential benefits of focusing early discovery and his or her expectations about how the parties will conduct it. The judge can address concerns that one or more parties will misunderstand the process or engage in inappropriate tactics. The judge might consider discussing with the parties what objections typically would or would not be appropriate. If the parties have reached agreement on how to focus early discovery to get the most important information from the most accessible sources, there should be few occasions for objections on relevance or proportionality grounds.

Judges should consider using other tools designed to facilitate and accelerate the exchange of core information. For example, judges should consider using the Initial Discovery Protocols for Employment Cases Alleging Adverse Action in cases where they apply. Developed jointly by experienced plaintiff and defense attorneys, these protocols are pattern discovery requests that identify documents and information that are presumptively not objectionable and that must be produced at the start of the lawsuit. The self-described purpose of these protocols is to "encourage parties and their counsel to exchange the most relevant information and documents early in the case, to assist in framing the issues to be resolved and to plan for more efficient and targeted discovery." The protocols are another way to work toward proportional discovery and have been used effectively in courts around the country. It is expected that work will be undertaken to develop similar subject-specific discovery protocols for other practice areas.

<div style="background-color:#8B3A4A;color:white;text-align:center">PRACTICE 6</div>

In a case in which discovery will initially focus on particular subjects or sources of information, the judge should consider including guidance in the Rule 16(b) case-management order.

## COMMENTARY

While focusing early discovery can advance the goal of proportionality, it can also cause concern to some litigants. Some may worry that it will be used as a tool to restrict discovery, fearing that they will be required to make a special case for proportionality before any additional discovery will be allowed. Others may worry that it will be used as a tool to protract discovery if additional rounds of discovery are viewed as a given regardless of how robust the initial efforts were or what information they yielded. Still others may worry that expressing an interest in focusing early discovery will be mischaracterized or misunderstood as a desire for a rigidly phased or staged discovery process. Absent any guidance from the judge, these and other concerns may lead parties to forego or resist focusing early discovery even when it would make sense to do so.

The judge should consider taking steps to avoid misunderstanding and provide clarity. The judge might consider including a statement in the Rule 16(b) case-management order acknowledging that the parties are initially conducting discovery into certain issues or from certain sources and will use the results to guide decisions about further discovery. The judge might consider dividing the discovery period, using an interim deadline for completing early discovery and a later deadline for completing further discovery that is warranted. Whether the judge formally divides the discovery period or simply guides the parties to focus their early discovery, the judge might find it helpful to schedule a discovery status conference or ask for a report after the early discovery is complete.

If discovery is focused on particular subjects or sources, the parties and the judge should consider whether this may require some individuals to be deposed more than once, or require the responding party to search a source more than once. If so, the parties and the judge should address the issues, whether by adjusting the discovery to avoid repeat efforts, expressly leaving open the possibility of limited additional discovery from the same witness or source, or specifying other appropriate steps.

If the parties reach agreement on subjects or sources for early focused discovery, a party stipulation or a court order might also specify ways to streamline that discovery, including arranging for the informal exchange of information.

## PRACTICE 7

The judge should consider requiring the parties to request a conference before filing a motion relating to discovery, including a motion to compel or to quash discovery or seeking protection from discovery.

### COMMENTARY

A live pre-motion conference is often an effective way to promptly, efficiently, and fairly resolve a discovery dispute. The conference often resolves the dispute, either by leading to an agreed resolution or by providing the judge with the information needed to rule. The case remains on track, the parties are saved expense, and the parties and judge are saved the work and time associated with formal motion practice that is often unnecessary. If the pre-motion conference indicates that some briefing or additional information on specific issues would be helpful, the judge can focus further work on the specific issues that require it.

The judge might consider requiring the party requesting a pre-motion conference on a discovery dispute to send a short communication – often limited to two pages – describing (not arguing) the issues that need to be addressed and allowing a similarly limited response.

The judge can include a pre-motion conference requirement and procedure in the case-management order issued under Rule 16(b). The procedure can include provisions for using telephone and video conferences if one or more of the parties cannot attend in person.

Some districts address this practice in their local guidelines or rules.

## PRACTICE 8

When proposed discovery would not or might not be proportional if allowed in its entirety, the judge should consider whether it would be appropriate to grant the request in part and defer deciding the remaining issues.

### COMMENTARY

Allowing the proposed discovery in part can further an iterative process. The discovery allowed may be all that is needed, or it may clarify what further discovery is appropriate. Deferring a decision on whether to allow the rest of the proposed discovery gives the judge and parties more information to decide whether all or part of it is proportional.

Sampling can be used to determine whether the likely benefits of the proposed discovery, or the burdens and costs of producing it, warrant granting all or part of the remaining request at a later time.

If a modified request would be proportional, the judge ordinarily should permit the proportional part of the discovery. However, the judge is under no obligation to do so and may rule on the discovery request as made.

## PRACTICE 9

The parties and judge should consider other discovery rules and tools that may be helpful in achieving fair, efficient, and cost-effective discovery.

### COMMENTARY

Other discovery rule changes and tools, not part of the proportionality amendments, should be considered as part of the judge's and parties' overall plan for fair, workable, efficient, and cost-effective discovery and case resolution.

Rule 34 is amended to allow a requesting party to deliver document requests to another party before the Rule 26(f) conference. The requests are not considered served until the meeting, and the 30-day period to respond does not start until that date. The early opportunity to review the proposed requests allows the responding party to investigate and identify areas of concern or dispute. The parties can discuss and try to resolve those areas at the Rule 26(f) conference on an informed basis. If disputes remain, the parties should use the Rule 26(f) report and the Rule 16(b) conference to bring them to the court for early resolution.

As an alternative to the formal mechanism that now exists under Rule 34, some lawyers may prefer to share draft, unsigned document requests, interrogatories, and requests for admission. Both the formal and informal practices prompt an informed, early conversation about the parties' respective discovery needs and abilities.

Rule 34 is also amended to prohibit boilerplate objections to requested discovery, including objections to proportionality, and to require the responding party to state whether documents are being withheld on the basis of objections. A judge's prompt enforcement of these requirements can be very helpful in managing discovery.

Rule 26(c) makes explicit judges' authority to shift some or all of the reasonable costs of discovery on a good cause showing if a party from whom discovery is sought moves for a protective order. ▶

A judge may, as an alternative to denying all of the requested discovery, order that some or all of the discovery may proceed on the condition that the requesting party bear some or all of the reasonable costs to respond. The longstanding presumption in federal-court discovery practice is that the responding party bears the costs of complying with discovery requests. That presumption continues to apply. The 2015 amendments to Rule 26(c) make that authority explicit but do not change the good cause requirement or the circumstances that can support finding good cause.

Rule 37(e) is amended to clarify when and how a judge may respond to a party's inability to produce electronically stored information because it was lost and the party failed to take reasonable steps to preserve it. It provides a nationally uniform standard for when a judge may impose an adverse inference instruction or other serious sanctions. It responds to the concern that some persons and entities were over-preserving out of fear their actions would later be judged under the most demanding circuit standards. Working toward proportionality in preservation is an important part of achieving proportionality in discovery overall. Other rule amendments emphasize the need for careful attention to preservation issues. Rule 26(f) has been amended to add preservation of electronically stored information to the list of issues to be addressed in the parties' discovery plan. Rule 16(b) is amended to add preservation of electronically stored in formation to the list of issues the case-management order may address.

Rule 16(b) and Rule 26(f) have been amended to encourage the use of orders under Rule 502(d) of the Federal Rules of Evidence providing that producing information in the litigation does not waive attorney-client privilege or work-product protection, either in that litigation or in subsequent litigation. Nonwaiver orders under Federal Rule of Evidence 502(d) can promote proportionality by reducing the time, expense, and burden of privilege review and waiver disputes.

Questions impacting and approaches to discovery are usually best explored in a live conference between the judge and the parties, preferably before formal discovery-related motions (such as under Rule 26(c) or Rule 37(a)) and accompanying briefs are filed. A live Rule 16 or pre-motion conference enables the judge and the parties to examine how the various discovery tools can best be used to create and implement an effective discovery and case-management plan.

PRACTICE 10

The parties and the judge should consider using technology to help achieve proportional discovery.

## COMMENTARY

Technology can help proportionality by decreasing the burden or expense, or by increasing the likely benefit, of the proposed discovery.

When the discovery involves voluminous amounts of electronically stored information, the parties and judge should consider using technologies designed to categorize or prioritize documents for human review.

Because technology evolves quickly, the parties and the judge should not limit themselves in advance to any particular technology or approach to using it. Instead, the parties and the judge should consider what specific technology and approach works best for the particular case and discovery.

---

1  These guidelines and practices use the word "parties" to cover lawyers and represented litigants, although many of the practices apply usefully to cases involving unrepresented litigants as well.

**ATTACHMENT  4**

**CONSENT TO PROCEED BEFORE A MAGISTRATE JUDGE**

*(Revised March 2017)*

UNITED STATES DISTRICT COURT                    SOUTHERN DISTRICT OF TEXAS

§
§
§
*versus*                                §                    CIVIL ACTION
§
§
§

## Consent to Proceed Before a Magistrate Judge

All parties to this case waive their right to proceed before a district judge and consent to have a United States Magistrate Judge conduct all further proceedings, including the trial and judgment.  28 U.S.C. § 636©.

_____                _____


_____                _____


## Order  to  Transfer

This case is transferred to United States Magistrate Judge

_____

to conduct all further proceedings, including final judgment.


_____                _____
Date                                          United States District Judge

*(Revised March 2017)*

**ATTACHMENT  5**

**THE JOINT PRETRIAL ORDER**

*(Revised March 2017)*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| _____, | § |
| | § |
| Plaintiff(s), | § |
| | § |
| v. | §   CIVIL ACTION NO. H-_____ |
| | § |
| _____, | § |
| | § |
| Defendant(s). | § |

**JOINT PRETRIAL ORDER**

**Appearance of Counsel**

List the parties, their respective counsel, and the addresses and telephone numbers of counsel (including e-mail addresses) in separate paragraphs.

**Statement of the Case**

Give a brief statement of the case.  The court may read this statement to the jury panel during the voir dire examination.   Include names, dates, and places, and a brief statement of the parties' contentions and the issues to be resolved at trial.

**Jurisdiction**

Briefly set out why the court has jurisdiction of the subject matter and the parties.  If there is an unresolved jurisdictional question, state the problem.

**Motions**

List any pending motions.

**The Parties' Contentions**

State concisely in separate paragraphs the contentions that are necessary to the relief sought in the case.  A lengthy list of every "contention" is not helpful; include only those that are an essential basis for resolving the case.

**Admissions of Fact**

List only those admitted facts necessary to the disposition and relief sought in the case, which require no proof.

1

*(Revised March 2017)*

## Disputed Facts

List only those disputed facts necessary to the disposition and relief sought in the case.

## Agreed Applicable Propositions of Law

State only those legal propositions not in dispute that are necessary to the disposition and relief sought in the case.

## Contested Issues of Law

State briefly the disputed issues of law necessary to the disposition and relief sought in the case.  A memorandum of authorities addressing only these issues must accompany the Order.

## Exhibits

Each party will attach to this Joint Pretrial Order two copies of a list in the form shown by attachment A (or a similar form) of all exhibits expected to be offered.  Each party will make the exhibits available for examination by the opposing parties.  This rule does not apply to rebuttal exhibits, which cannot be anticipated.

All parties requiring authentication of an exhibit must notify the offering counsel in writing within 7 days after the exhibit is listed and made available to opposing parties.  Failure to do so may be deemed an admission of authenticity.

The court will admit all exhibits listed in the final Joint Pretrial Order into evidence unless the opposing parties file written objections with authorities at least 7 days before trial.

The offering party will mark his own exhibits before trial to include the party's name, case number, and exhibit number on each exhibit.

## Witnesses

List separately the names and addresses of witnesses who will be called and those who may be called and include a brief statement of the subject matter and substance of their testimony.  If a witness is to appear by deposition, cite the inclusive pages and lines to be read.  Objections to those portions (citing pages and lines) with supporting authority must be filed at least 7 days before trial.

Each party will also attach to the Joint Pretrial Order two copies of a list of witnesses' names for use only by court personnel.

Include in this section the following statement:

> "If any other witnesses will be called at the trial, their names, addresses and the subject matter of their testimony will be reported to opposing counsel as soon as they are known.  This restriction

*(Revised March 2017)*

will not apply to rebuttal or impeachment witnesses, the necessity of whose testimony cannot reasonably be anticipated before  trial."

## Settlement

Include a statement as to the status of any settlement negotiations.

## Trial

State:

(a)     whether the trial will be jury or nonjury;

(b)     the probable length of trial;

(c)     the availability of witnesses; and

(d)     any foreseeable logistical problems.

## Additional Required Attachments

**For jury trials include:**

(a)     Proposed questions for the voir dire examination.

(b)     A single, joint proposed jury charge, including all instructions, definitions,  and questions, separately numbered and presented  on a separate page, with authority.  If there are instructions, definitions, or questions as to which the parties cannot agree, the disputed language is to be set out in bold type, italics, or underlined to identify it as disputed and labeled to indicate which party is requesting the disputed language.  The proposed charge must also be submitted on a CD compatible with Corel WordPerfect 11 word processing.

(c)     A memorandum of law.

**For nonjury trials include:**

(a)     Proposed findings of fact and conclusions of law.

(b)     Memorandum of law.

_____          _____
            Date                                                 LEE H. ROSENTHAL
                                                     CHIEF UNITED STATES DISTRICT JUDGE

*(Revised March 2017)*

APPROVED:

_____      _____
Counsel for Plaintiff(s)                              Date

_____      _____
Counsel for Defendant(s)                             Date

*(Revised March 2017)*

**ATTACHMENT  5-A**

**EXHIBIT LIST**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| _____ | § _____ |
| | § CA/CR NO. |
| _____ | § |
| | § **LEE H. ROSENTHAL** |
| v. | § CHIEF JUDGE |
| | § |
| _____ | § **Lisa Eddins** _____ |
| | § COURTROOM       COURT |
| _____ | § CLERK              REPORTER |
| | § |
| _____ | § _____ |
| | PROCEEDING |

_____

EXHIBIT LIST OF

| NO. | DESCRIPTION | OFFR | OBJ | DATE | |
|---|---|---|---|---|---|
| | | | | ADMIT | N/ADM |
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |

*(Revised March 2017)*

| 7 | | | | | |
|---|---|---|---|---|---|
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |
| 11 | | | | | |

*(Revised March 2017)*

**ATTACHMENT  6**

**CERTIFICATE OF SERVICE IN REMOVED ACTION**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| _____, | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-_____ |
| | § | |
| _____, | § | |
| | § | |
| Defendant(s). | § | |

**CERTIFICATE OF SERVICE IN REMOVED ACTION**

I certify compliance with the court's Order entered upon filing of the petition for removal of this action.

On _____, 20\_\_\_, I served copies of the Order for Conference and Court Procedures on all other parties.

_____                    _____
Date                                                                                  Attorney for Defendant(s)

*(Revised March 2017)*